**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| TERRATHERM, INC., a Massachusetts corporation,<br><br>Plaintiff,<br><br>v.<br><br>WOOD ENVIRONMENT & INFRASTRUCTURE SOLUTIONS, INC. (f/k/a AMER ENVIORNMENT & INFRASTRUCTURE, INC.),<br><br>Defendant. | Civil Action No.<br>1:19-cv-02863-SDG |

## ORDER

This matter is before the Court on Defendant Wood Environment & Infrastructure Solutions, Inc.'s ("Wood's") motion to dismiss or stay [ECF 10]. For the reasons stated below, Wood's motion is **GRANTED,** and the action is **dismissed without prejudice**.

## I.   BACKGROUND

The following facts are treated as true for purposes of this motion.[1] Wood contracted with the United States Department of the Air Force ("Air Force") to perform remediation of soil and groundwater at Williams Air Force Base in Mesa,

---

[1]   *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

Arizona (the "Prime Contract").[2] In December 2013, Wood and TerraTherm executed a subcontract agreement pursuant to which TerraTherm was to provide specialty equipment and remediation services at the Air Force base (the "Subcontract").[3] This remediation process is referred to as Steam Enhanced Extraction ("SEE").[4] Pursuant to the original Subcontract, TerraTherm was required to provide its equipment and SEE services through February 2016.[5]

Due to a higher-than-anticipated level of contamination, the Air Force directed Wood to continue SEE operations beyond February 2016.[6] Wood, in turn, directed TerraTherm to continue providing SEE services and its equipment.[7] Wood and TerraTherm executed Change Orders to memorialize these extensions and TerraTherm's obligation to provide additional SEE services.[8] In June 2016, after a dispute arose between Wood, the Air Force, and federal and local government environmental agencies concerning the necessity of further SEE

---

[2] ECF 1, ¶¶ 10, 12.

[3] *Id.* ¶ 13.

[4] *Id.* ¶¶ 2, 13.

[5] *Id.* ¶ 15.

[6] ECF 15, at 2.

[7] ECF 1, ¶ 15; ECF 15, at 2.

[8] *Id.*; ECF 21-1, at 1–7.

remediation services, the Air Force issued Wood a stop-work order.[9] Wood, in turn, issued TerraTherm a stop-work order.[10] Following the stop-work orders, TerraTherm contends Wood never paid for TerraTherm's extended SEE services and that Wood has failed to return, and continued using, TerraTherm's equipment at the Air Force base.[11] TerraTherm claims Wood has ignored its invoices requesting payment and detailing the rental value of the equipment and has instead appropriated the equipment for Wood's own.[12]

On June 21, 2019, TerraTherm filed this Complaint, asserting five causes of action against Wood for (1) breach of contract; (2) unjust enrichment/quantum meruit; (3) open account and account stated; (4) Georgia statutory and common law conversion; and (5) attorney's fees and costs.[13] On July 18, 2019, Wood filed the instant motion to dismiss or stay.[14] Generally, Wood argues this action should be dismissed or stayed pursuant to the Prime Contract and Subcontract, which Wood argues bind TerraTherm to the decision made in a dispute between Wood

---

[9] ECF 1, ¶ 16; ECF 15, at 6.

[10] *Id.*

[11] ECF 1, ¶¶ 18–23.

[12] *Id.* ¶¶ 18–23.

[13] *See generally id.*

[14] ECF 10-1.

and the Air Force currently pending before the Armed Services Board of Contract Appeals ("Board").[15] According to Wood, the "Subcontract incorporates the Prime Contract and binds TerraTherm to Wood in the same manner that Wood is bound to the Air Force under the Prime Contract."[16] On August 15, 2019, TerraTherm filed a response in opposition to Wood's motion.[17] Wood filed a reply in support of its motion on August 29, 2019.[18] On January 13, 2020, the Court held a telephonic status conference with counsel for the parties.[19]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

---

[15] *Id*. at 1–2.
[16] *Id*. at 10.
[17] ECF 15.
[18] ECF 21.
[19] ECF 28.

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.,* 605 F. 3d 1283, 1289 (11th 2010) (*quoting Twombly*, 550 U.S. at 570). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (*citing Twombly*, 550 U.S. at 556). "A complaint does not state a facially plausible claim for relief if it shows only a sheer possibility that the defendant acted unlawfully." *Waters Edge Living, LLC v. RSUI Indem. Co.,* 355 F. App'x 318, 322 (11th Cir. 2009). A complaint must also present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (*quoting Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (*quoting Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261

(11th Cir. 2006)). This principle, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### a. Choice of Law

"In diversity cases, the choice-of-law rules of the forum state determine what law governs." *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013). "Pursuant to Georgia law, contractual choice-of-law provisions will be enforced unless application of the chosen law would be contrary to the public policy or prejudicial to the interests of this state." *Nat'l Freight, Inc. v. Consol. Container Co., LP*, 166 F. Supp. 3d 1320, 1326 (N.D. Ga. 2015) (qu*oting CS– Lakeview at Gwinnett, Inc. v. Simon Prop. Grp., Inc.*, 283 Ga. 426, 428 (2008)).

Paragraph 41 of the Subcontract contains a choice of law provision that states: "This Agreement is to be governed by and construed in accordance with the laws of the state of Georgia."[20] Neither party has suggested that the application of Georgia law would violate any public policy or be prejudicial to any state's interests. Accordingly, the choice of law provision is valid and Georgia law applies to this dispute.

---

[20] ECF 10-2, ¶ 41.

### b. Analysis

As a matter of contract, TerraTherm is barred from maintaining this suit against Wood. "[T]he cardinal rule of contract construction is to ascertain the intention of the parties." *Winders v. State Farm Fire & Cas. Co.*, 359 F. Supp. 3d 1274, 1277 (N.D. Ga. 2018) (*citing Garrett v. S. Health Corp. of Ellijay, Inc.*, 320 Ga. App. 176, 182 (2013)). "No construction is required or even permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation." *Id.* (*citing Shepherd v. Greer, Klosic & Daugherty*, 325 Ga. App. 188, 190 (2013)).

In general, courts enforce dispute resolution procedures that are conditions precedent to litigation through a stay or dismissal pending the completion of the dispute resolution process. *Seal & Co. v. A.S. McGaughan Co.*, 907 F.2d 450, 454 (4th Cir. 1990) (*quoting United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 404, n.6 (1966) ("The general rule is that parties are free to contract for dispute resolution procedures which, in effect, turn breach of contract claims into claims for relief under the contract.")). This rule applies to contracts with the government mandating specific performance. *Crown Coat Front Co. v. United States*, 386 U.S. 503, 512 (1967) ("It is now crystal clear that the contractor must seek the relief provided for under the contract or be barred from any relief in the courts."); *Sikorsky Aircraft*

*Corp. v. United States*, 105 Fed. Cl. 657, 668 (2012) ("[C]ontractors must follow the dispute resolution proceedings, if any, set out in their contracts, and that a claim assertable [sic] in court does not accrue until those proceedings are completed."); *Len Co. & Assocs. v. United States*, 385 F.2d 438, 442 (Ct. Cl. 1967) ("To the extent that complete relief is available under a specific provision—*i.e.*, the claim is both cognizable under and adjustable by the terms of the contract . . . the controversy arises under the contract and is subject to initial administrative resolution."). *See also Reg'l Transp. Auth. v. Grumman Flxible Corp.*, 532 F. Supp. 665, 666 (N.D. Ill. 1982) (dismissing claim because "the disputes clause requires that RTA first exhaust its administrative remedy [with the government] before filing suit").

The Prime Contract between Wood and the Air Force contains a dispute resolution clause that requires Wood to initiate a dispute by submitting a written claim to a Contracting Officer.[21] Once the claim has been certified, if it is denied by the Contracting Officer, Wood must appeal that denial to the Board, which then conducts a full evidentiary hearing.[22] In the Subcontract, Wood and TerraTherm expressly agreed that:

---

[21] ECF 10-1, at 2.

[22] *Id.*

> [TerraTherm] shall be bound to certain terms and
> conditions contained in the Prime Contract to the same
> extent as [Wood] is bound to [the Air Force] under the
> Prime Contract.[23]

If Wood elects to prosecute a dispute against the Air Force involving the Subcontract in the administrative forum required by the Prime Contract, TerraTherm must "fully cooperate with [Wood] in prosecuting the dispute."[24] Any decision made by the administrative forum relating to the Prime Contract and Subcontract "shall in turn be binding upon [TerraTherm] with respect to such matter, provided: [Wood] has afforded [TerraTherm] an opportunity to meaningfully participate in [Wood's] prosecution of the dispute."[25] If Wood elects to appeal any decision by the Contracting Officer to the Board, "[a]ny decision . . . if binding upon [Wood], shall in turn be binding upon [TerraTherm], provided: [Wood] has afforded [TerraTherm] an opportunity to meaningfully participate in [Wood's] appeal."[26] Wood and TerraTherm could only pursue claims against one

---

[23] ECF 10-2, ¶ 2.
[24] *Id.* ¶ 30.
[25] *Id.*
[26] *Id.*

another if Wood unilaterally chose not to a pursue a claim against the Air Force with a Contracting Officer or appeal a claim denial to the Board.[27]

TerraTherm does not challenge the validity or enforceability of the Subcontract. It is undisputed that neither Wood nor TerraTherm have been compensated for the work they conducted at the Air Force base beyond January 2016. The parties acknowledge that Wood is currently prosecuting claims against the Air Force pursuant to the procedures required by the Prime Contract relating to those unpaid SEE services, including TerraTherm's claims as the subcontractor.

On July 19, 2018, Wood submitted a Request for Equitable Adjustment to the Air Force.[28] On March 7, 2019, Wood certified the claim and requested a final decision from the Contracting Officer relating to its request for "compensable changes and suspensions of work under the [Prime] Contract."[29] On May 7, 2019, the Contracting Officer denied Wood's claim.[30] On July 17, 2019, Wood filed its appeal with the Board, thus triggering Wood's right to an evidentiary hearing.[31] As TerraTherm concedes, Wood has included TerraTherm's unpaid invoices for

---

27  *Id.*
28  ECF 10-3, at 4, ¶ 4.
29  *Id.* ¶¶ 5–6.
30  *Id.* ¶ 7.
31  *Id.*

the additional SEE services and rental value of TerraTherm's equipment in the appeal to the Board.[32]

Accordingly, pursuant to the express terms of the Subcontract, TerraTherm is bound by the Contracting Officer's and Board's decisions.[33] TerraTherm cannot maintain this separate suit against Wood because the parties agreed that TerraTherm's claim would "pass-through" Wood to the Air Force. Courts have expressly recognized as valid contract provisions that permit a general contractor to "pass-through" the claims of a subcontract to the principal and bind the subcontractor. *Raymer v. Foster & Cooper, Inc.*, 195 Ga. App. 200, 202 (1990) (upholding "pass-through" contract provision between contractor and subcontractor because "[defendant] presented evidence that any recovery from the Board arising out of the claims of these two subcontractors would be 'passed on' to the subcontractors pursuant to the prior agreement of the parties"). *See also Montano Elec. Contractor v. United States*, 114 Fed. Cl. 675, 680 (2014) ("[S]ubcontractor's claims may be brought against the government if the prime contractor brings the suit on behalf of the subcontractor—as a pass-through or sponsored claim."). Thus, since the terms of the Subcontract are clear and

---

[32] ECF 15, at 14.

[33] ECF 10-2, § 2.

unambiguous, TerraTherm is bound to its provisions and cannot maintain this action.

Notwithstanding the enforceability of the Subcontract, TerraTherm argues against dismissal for two primary reasons: (1) The pending dispute between the Air Force and Wood under the Prime Contract does not relate to the Subcontract or TerraTherm's conversion claims; and (2) Wood has not provided TerraTherm an opportunity to meaningfully participate in prosecuting Wood's claim against the Air Force under the Prime Contract.[34]

TerraTherm's first argument is unpersuasive. The company contends that the entirety of Wood's appeal before the Board is unrelated to the claims in this Court because "it is undisputed that Wood directed TerraTherm to perform the additional SEE work and TerraTherm did so. . . . Wood is required to reimburse TerraTherm for such additional work directed by Wood, regardless of whether the work was additional work directed by the [Air Force], or work required by the Prime Contract."[35]

---

[34] ECF 15, at 3–5.

[35] *Id.* at 13–14.

A plain reading of TerraTherm's Complaint undermines its argument, as each of its claims relate to the services required by the Subcontract.[36] In fact, TerraTherm contradicts itself by conceding that the Air Force directed Wood, which then directed TerraTherm, to continue performing SEE services beyond the original end date of the Prime Contract.[37] TerraTherm also concedes its "unpaid invoices relate to [the] additional [SEE] work that Wood directed TerraTherm to perform."[38] Those invoices, attached to the Complaint, seek reimbursement for work related only to the SEE services TerraTherm agreed to undertake in the

---

[36] ECF 1 ¶¶ 26–33 (Count I—Breach of Contract: "The Subcontract between TerraTherm and [Wood] is a valid and enforceable contract, and [Wood] was obligated pursuant to its terms. . . . [Wood], as a party to its Subcontract with TerraTherm, owed TerraTherm a contractual duty to compensate TerraTherm pursuant to the Subcontract for the services performed by TerraTherm and the equipment provided by TerraTherm."); ¶¶ 34–40 (Count II—Unjust Enrichment/Quantum Meruit: "[Wood] contracted for and expected that it would have to pay for the benefit of the services and equipment provided by TerraTherm."); ¶¶ 41–49 (Count III—Open Account and Account Stated: "TerraTherm and Defendant entered into the Subcontract by which TerraTherm was to provide SEE remediation services and associated equipment for environment remediation at ST012 at Williams AFB."); ¶¶ 50–56 (Count IV—Statutory and Common Law Conversion: "TerraTherm owns title to, and has the immediate right of possession of, the equipment provided for use in performing services under the Subcontract that remains in the possession of [Wood].").

[37] ECF 15, at 2.

[38] *Id.*

Subcontract. Moreover, the Change Orders relied on by TerraTherm expressly provide that any dispute between Wood and TerraTherm relating to the expanded SEE services would be resolved in accordance with the dispute resolution procedure in the Subcontract.[39] Thus, TerraTherm's claims are without doubt related to its obligations under the Subcontract. It is therefore bound by the dispute resolution procedure mandated by the Prime Contract and Subcontract.

TerraTherm's second proffered rationale is likewise unconvincing. During the January 13, 2020 conference call with the Court, TerraTherm represented that it has been able to meaningfully participate in Wood's ongoing appeal before the Board.[40] TerraTherm's alleged lack of participation in the submission of the initial claim to the Contracting Officer does not change this analysis, since the officer's decision will not be binding or have any precedential value after the Board rules on Wood's claims.

Even assuming, *arguendo*, that Wood *had* refused to offer TerraTherm an opportunity to meaningfully participate in the appeal to the Board, that alone would not permit TerraTherm to maintain the instant action. Instead, it would be grounds for TerraTherm to argue—after the conclusion of the appeals process set

---

[39] ECF 21-1, at 4, 7.
[40] ECF 28.

out in the Prime Contract—that it should not be bound by the Board's decision.[41] The extent of TerraTherm's participation in the appeals process goes to the preclusive effect of the Board's decision, not TerraTherm's ability to maintain a concurrent lawsuit in this Court.

Finally, TerraTherm argues its common law and statutory conversion claims against Wood "are wholly outside the scope of the [Board] Appeal and the Subcontract, so they are not subject to dismissal."[42] TerraTherm argues these are "separate tort claims" that have "nothing to do with Wood's Prime Contract dispute with the Air Force."[43]

Contrary to TerraTherm's representations, the conversion claims relate directly to its performance under the Subcontract. This is clear from a plain reading of the Complaint.[44] Moreover, Paragraph 30 of the Subcontract applies more broadly than TerraTherm represents and is applicable if Wood elects to

---

[41] ECF 10-2, ¶ 30 ("If [Wood] elects to appeal any such decision of [the Air Force] . . . [a]ny decision upon appeal, if binding upon [Wood], shall in turn be binding upon [TerraTherm], provided: [Wood] has afforded [TerraTherm] an opportunity to meaningfully participate in [Wood's] appeal.").

[42] ECF 15, at 15.

[43] *Id*. at 16.

[44] ECF 1, ¶¶ 50–56 (Count IV); *see supra* note 36.

prosecute "any dispute *involving this Agreement*."[45] TerraTherm's reliance on *Hanover Insurance Co. v. Hermosa Construction Group* is unpersuasive, as the Court in that case denied a motion to dismiss pursuant to the economic loss rule after finding an independent duty between the parties not arising out of a contract. 57 F. Supp. 3d 1389, 1397 (N.D. Ga. 2014). Here, TerraTherm fails to identify any independent duty *not* involving the Subcontract. Instead, TerraTherm explicitly relies on the Subcontract to plead its conversion claim. Moreover, Wood represents that it has included the "rental charges" of TerraTherm's equipment in its appeal to the Board.[46]

Accordingly, TerraTherm is bound by the express terms of the Subcontract to the dispute resolution process afforded in the Prime Contract and cannot maintain a separate action in this forum against Wood until the conclusion of Wood's appeal before the Board.

---

[45] ECF 10, § 30 (emphasis added).

[46] ECF 1, ¶¶ 50–56 ("TerraTherm owns title to, and has the immediate right of possession of, the equipment provided for use in performing services under the Subcontract that remains in the possession of Defendant. . . . [Wood] failed to compensate TerraTherm or return its property after demand for the return of the equipment was presented. TerraTherm also presented [Wood] with a Bill of Sale for the equipment, which [Wood] also failed to pay."); ECF 21, at 10.

### c. Remedy

The Court finds that a dismissal of TerraTherm's claims, without prejudice, is preferable to a stay. Facing a similar issue, the District Court for the Northern District of Illinois in *Regional Transportation Authority v. Grumman Flxible Corp.* stated that, while "[i]t is true that some courts have simply stayed proceedings covered by a disputes clause . . . dismissal without prejudice [is] the more appropriate procedure." 532 F. Supp. at 667. The court found dismissal preferable because the "administrative decision may well moot the need for this lawsuit or at least radically alter its contours" and the plaintiff would "in no way be harmed by a dismissal without prejudice." *Id.* Likewise, a dismissal without prejudice is preferable because Wood's success or failure before the Board, as well as the length of time necessary for the appeal to be heard and adjudicated, may radically alter or completely obviate the need for or scope of TerraTherm's claims. There is also no indication that a dismissal without prejudice will substantially harm or limit TerraTherm in any way.

## IV. CONCLUSION

Wood's motion to dismiss is **GRANTED**. TerraTherm's Complaint is **DISMISSED WITHOUT PREJUDICE**. The Clerk is **DIRECTED** to enter judgment in favor of Wood and close the case. Each party shall bear its own costs.

**SO ORDERED** this the 28th day of January 2020.

Steven D. Grimberg
United States District Court Judge